IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN DAVID PANOS,

    Plaintiff,

v.                                                                           Civil Action No. 3:14cv698

DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Dismiss filed by Defendant, the Director of the United States Patent and Trademark Office (the "Director"). (ECF No. 7.) Plaintiff John David Panos responded, *pro se*, and the Director replied. (ECF Nos. 10–11.) Accordingly, this matter is ripe for disposition. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. For the following reasons, the Court will grant the Director's Motion to Dismiss.

### I. Legal Background and Standards of Review

**A.**     **Patent Office Statutory and Regulatory Background**

The United States Patent and Trademark Office ("USPTO") is responsible for "the granting and issuing of patents," 35 U.S.C. § 2(a)(1), subject to the statutory requirements for patent applications, the examination of applications, and patentability, *see id.* §§ 101–03, 111–18, 131–34. The USPTO examines patent applications based on the statutory requirement of patentability. *See* 35 U.S.C. § 131; 37 C.F.R. § 1.104. If the USPTO examiner determines that the invention as claimed is not patentable, he or she rejects the claims. 37 C.F.R. § 1.104(c); *see*

*also* Manual of Patent Examining Procedure ("MPEP") § 707 (9th. ed. Mar. 2014).[1] An applicant whose claims are twice rejected may appeal to the Patent Trial and Appeal Board (the "Board"). 35 U.S.C. § 134(a). A Board decision constitutes final agency action on patentability subject to judicial review either in this Court or in the Court of Appeals for the Federal Circuit. *See* 35 U.S.C. §§ 141(a), 145; 37 C.F.R. § 41.2 (defining "final").

To enable the USPTO to carry out its responsibilities, Congress conferred on the agency the authority to establish regulations that "govern the conduct of proceedings in the [USPTO]." 35 U.S.C. § 2(b)(2)(A); *see also In re Bogese*, 303 F.3d 1362, 1368 (Fed. Cir. 2002) ("The [USPTO] has inherent authority to govern procedure before the [USPTO], and that authority allows it to set reasonable deadlines and requirements for the prosecution of applications."). Pursuant to this authority, the USPTO has issued regulations governing examinations of patent applications, including appeals of adverse patentability determinations to the Board. *See generally* 37 C.F.R. pts. 1 & 41.

In delegating authority, Congress also expressly conferred on the USPTO the authority to establish certain fees.[2] Congress, however, authorized the USPTO to establish fees for all other patent-related processing, services, or materials to recover the estimated average costs to the USPTO of such processing, services, or materials. 35 U.S.C. § 41(d)(2)(A). The fees established by the USPTO include additional application processing fees and appeal fees. 37 C.F.R. §§ 1.17, 41.20. The application and appeal fees include an appeal forwarding fee to

---

[1] The MPEP sets forth the procedures for examination by the USPTO. The USPTO publishes both current and archived versions of the MPEP online. *See* Manual of Pat. Examining P. (9th ed. Mar. 2014), http://www.uspto.gov/web/offices/pac/mpep/.

[2] Congress itself set some fees by statute that the USPTO "*shall* charge." 35 U.S.C. § 41(a) (emphasis added). These fees include application filing, examination, and search fees, *id.* §§ 41(a)(1), (a)(3), (d)(1); excess-claim fees, *id.* § 41(a)(2); appeal fees, *id.* § 41(a)(6); and, maintenance fees, *id.* § 41(b)(1).

recover the cost of processing appeals. *Id.* § 41.20(b)(4); Setting and Adjusting Patent Fees, 78 Fed. Reg. 4,212, 4,230–31 (Jan. 18, 2013) (to be codified at 37 C.F.R. § 41.20) (explaining the appeal fee system including an appeal fee and a forwarding fee). Congress also authorized the USPTO to refund certain fees, including those for excess claims canceled *before* examination on the merits and any fee paid by mistake or in excess of the fee required if requested within two years from when the fee was paid. 35 U.S.C. §§ 41(a)(2)(C), 42(d); 37 C.F.R. § 1.26(a)–(b).

In addition to fees, Congress set certain statutory time limits for responding to any USPTO action, dictating that should an applicant fail to timely respond "the application *shall* be regarded as abandoned." 35 U.S.C. § 133 (emphasis added); *see* 37 C.F.R. §§ 1.134–1.136. These time limits apply throughout the examination process, including during appeals to the Board. First, after filing a notice of appeal with the appeal fee, an appellant must file an appeal brief within two months. 37 C.F.R. §§ 41.31(a)(1), 41.37(a). Then, if the appeal results in an examiner's answer, the appeal forwarding fee must be paid within two months of the examiner's answer. *Id.* § 41.37(a); *see id.* §§ 41.39, 41.45(a). Failure to pay the forwarding fee results in dismissal of the appeal. *Id.* § 41.45(b). Upon dismissal, the proceedings terminate and applications with no allowed claims become abandoned. *Id.* § 1.197(a); MPEP § 1215.04.

The USPTO also has provided rules for reviving abandoned applications. An applicant can petition to revive an unintentionally abandoned application by filing, *inter alia*, the outstanding response to the USPTO action and a statement that the entire delay in filing the required response was unintentional. 37 C.F.R. § 1.137. Further, an applicant can petition to withdraw from abandonment an application deemed abandoned by the USPTO. *Id.* § 1.181; *see* MPEP § 711.03(c). A denial of a petition constitutes a final agency decision. *See* MPEP § 1002.02.

### B. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

In a motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

A Rule 12(b)(1) motion may also, as here, challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction intertwine with the facts central to the merits of the dispute, a court should find that jurisdiction exists and resolve any factual dispute on the merits because the jurisdictional attack would then closely mirror a challenge of the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219. A court need not examine jurisdiction in that manner when a plaintiff asserts the claim solely for the purpose of obtaining jurisdiction, or when a plaintiff raises a wholly insubstantial and frivolous claim. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

### C. Rule 12(b)(6): Failure to State a Claim

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

### D. Obligation to Construe *Pro se* Pleadings Liberally

Finally, district courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). However, a *pro se* plaintiff such as Panos must nevertheless allege "facts that state a cause of action." *Id.* (citation omitted). The Court

cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims" that the litigant failed to raise on the face of the complaint. *Newkirk v. Circuit Court of the City of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

## II. Factual and Procedural Background

The Complaint describes Panos's attempt to have his application for a patent, number 13/068,747 ("the '747 application"), approved by the USPTO. (Def.'s Mot. Dismiss Ex. 1 ("Admin. R.") A4–45,[3] ECF No. 7-1.) Panos appears to challenge the constitutionality of the patent laws and USPTO regulations utilized in reviewing his '747 patent application. He also raises miscellaneous matters. While Panos's Complaint does not express itself through linear pleading, the Court generously construes him to raise three claims:

| | |
|---|---|
| Count I: | The USPTO violates the Constitution by making "[j]udicial findings of fact" pertaining to patent applications, (Compl. 5), and employing "outrageously vast", "outrageously expensive", and "unconstitutionally vague" rules when doing so, (*id.* at 6) ("the "Improper Delegation" and "Unconstitutional Rules and Regulations" claims); |
| Count II: | The USPTO uses its rules to encourage the abandonment of patent applications so as to reduce the USPTO's backlog, (*id.* at 7), including increasing fees related to his application in violation of the "*Ex Post Facto* Clause," U.S. Const. art. I, § 9, cl. 3,[4] of the Constitution, (Compl. 9–11) (the "Unconstitutional Rules and Regulations" and "*Ex Post Facto* clause" claims); and, |
| Count III: | Miscellaneous allegations entitled "Spying on my home-sabotage of internet publication," alleging that "a laser beam [is] being directed from the sky" at his property and that his "YOUTUBE video may have been sabotaged." (*Id.* at 16–17 ("miscellaneous allegations").) |

---

[3] The Administrative Record contains 360 pages, but omits a page number for the coversheet. Because the coversheet has no pagination, the Administrative Record contains only 359 pages numbered A1 through A359. This explains the discrepancy with the 360 pages assigned by the CM/ECF docketing system. For ease of reference, the Court employs the Director's pagination of the Administrative Record.

[4] "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.

7

The Director attached the Administrative Record of Panos's patent application before the USPTO to her Motion to Dismiss. (ECF No. 7-1.) No party disputes the authenticity of the certified copy of the Administrative Record filed by the Director.[5]

### A. Summary of Factual Allegations in Panos's Complaint

On May 19, 2011, Panos filed the '747 application with the USPTO. (Admin. R. A1–45.) Following a period of administrative exchanges with the USPTO,[6] the examiner rejected his application for failure to comply with 35 U.S.C. § 112, which provides rules for preparing and submitting the "specification" required for a patent application.[7] (Compl. 3.) After making edits, Panos refiled his application. The examiner rejected the revised application a second time. Panos claims this finding to be "illegitimate." (*Id.*) Panos then filed an appeal of the examiner's rejection.[8] Panos believed his appeal was in progress when he received a letter titled

---

[5] For purposes of the motion to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to the Plaintiff. *Matkari*, 7 F.3d at 1134. The documents in the Administrative Record clearly constitute official public records that are central to the claims and sufficiently referred to in the Complaint. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

[6] Panos's application initially suffered from deficiencies such as missing parts and fees. (*See* Admin. R. A49–50, A54–58, A59–60, A64–66, A71–72, A76–95, A97–98.) Following several exchanges in which the USPTO informed Panos of the deficiencies and how to fix them, Panos's application was deemed abandoned. (*Id.* A99–100.) Panos successfully petitioned to revive his application pursuant to 37 C.F.R. § 1.137. (Admin. R. A159–64.) On October 11, 2012, the USPTO published Panos's application, and thereafter undertook examination on the merits. (Admin. R. A170; A173–85; A193–A254; A259–78.)

[7] For example, the statute requires a written description of the invention in "full, clear, concise, and exact terms." 35 U.S.C § 112(a). The examiner found that Panos's claims did not comply with this and other requirements of 35 U.S.C. §§ 103 & 112. (Admin. R. 304–20.)

[8] Panos appealed the examiner's claim rejections to the Board and filed an appeal brief. (Admin. R. A337–43.) *See* 35 U.S.C. § 134; 37 C.F.R. § 41.37.

"Examiner's Answer" from the USPTO.[9] (*Id.* at 4.) However, he later received a letter that the USPTO considered his patent application abandoned due to his failure to pay the appeal forwarding fee.[10] Panos concedes he "did not notice the fact that there was yet another appeal related item on the fee schedule." (*Id.* at 16).

After Panos began the patent application process, he allegedly discovered "a laser beam being directed from the sky" toward his property. (*Id.* at 16). Additionally, he began to observe abnormal functioning of his YouTube video. The video functioned abnormally when "only three people would be able to view [his video]" and when he received a message from YouTube that views of his video were "undercounted [ ] from April 29th through May 12 by about 2%." (*Id.* at 16–17.)

Panos asks the Court to: (1) use money he previously paid the USPTO to pay for his patent, including any future maintenance fees; (2) publish his new patent document on the USPTO's website; (3) revive his patent application and grant him a patent; (4) reveal the source of the laser beam and type of radiation; and, (5) reveal if his YouTube video was sabotaged and who is responsible.

---

[9] On June 10, 2014, the USPTO mailed the "Examiner's Answer" to Panos in response to his appeal brief. (Admin. R. A344–55.) *See* 37 C.F.R. § 41.39. Among other things, the examiner expressly advised Panos of the need to pay the appeal forwarding fee required by 37 C.F.R. § 41.20(b) within the two months permitted by 37 C.F.R. § 41.45(a) to avoid dismissal of the appeal. (Admin. R. A355.)

[10] Because Panos failed to pay the fee, on August 13, 2014, after the two-month period had run, the USPTO informed Panos that his appeal had been dismissed under 37 C.F.R. § 41.45(b) for failure to pay the forwarding fee. (Admin. R. A356–57.) On August 20, 2014, the USPTO issued a second Notice of Abandonment. (*Id.* A358–59.) The Notice of Abandonment informed Panos that petitions to request revival of the application under 37 C.F.R. § 1.137, or to request withdrawal of the holding of abandonment under 37 C.F.R. § 1.181, "should be promptly filed to minimize any negative effects on patent term." (*Id.* A359.) The record does not reflect that Panos filed any petition after the second Notice of Abandonment to request revival of his application or withdrawal of the abandonment holding.

### B. Procedural History

On October 15, 2014, Panos filed his Complaint asserting three counts against the Director. The Director has filed her Motion to Dismiss.[11] (ECF No. 7.) The Director seeks dismissal of all patent-related claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because Panos failed to exhaust administrative remedies. (ECF No. 8.) The Director also seeks dismissal of Panos's constitutional challenges to the USPTO rules and regulations for failure to state a claim upon which relief can be granted under Rule 12(b)(6). (*Id.*)

Panos filed his Response in Opposition to the Defendant's Motion to Dismiss. (ECF No. 10.) Panos requested that the Director withdraw the Motion to Dismiss or that the Court deny the motion. (*Id.* at 5.) The Director filed a Reply Brief in Support of Defendant's Motion to Dismiss. (ECF No. 11.) This matter is ripe for disposition.

### III. Analysis

#### A. Panos's Patent-Related Claims Fail to Survive 12(b)(6) Scrutiny Because the Complaint Lacks Plausible Constitutional Challenges Regarding the Director

A court normally addresses jurisdictional issues first, but Panos challenges the constitutionality of the USPTO laws and regulations. Therefore, the Court first assesses his constitutional claims attacking the validity of the rules that would be applied for a jurisdictional exhaustion analysis under Fed. R. Civ. P. 12(b)(1). Panos, suggesting he has a constitutional right to a patent, appears to contend that Congress has improperly delegated the power to evaluate patent applications to the USPTO, and that patent rules and regulations, including fees, violate constitutional precepts.

---

[11] The Director provided Panos with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 9.)

For the reasons stated below, the Complaint fails to allege plausible facts that Congress improperly delegated its authority or that the USPTO's rules and regulations violate the Constitution.[12] Therefore, the Court grants the Director's motion to dismiss all claims related to the USPTO's violation of the Constitution.

### 1. Congress Delegated Power to the USPTO to Deny or Approve Patent Applications in a Constitutional Manner

First, Panos argues that the USPTO exceeds its constitutional authority when it makes findings of fact in the course of patent applications. This argument amounts to a challenge to the constitutionality of Congressional delegation of power to evaluate patent applications. Panos's contention fails.

"No person has a vested right to a patent . . . ." *Boyden v. Comm'r of Patents*, 441 F.2d 1041, 1043 (D.C. Cir. 1971) (citing *McClurg v. Kingsland*, 42 U.S. 202, 206 (1843)); *see id.* at 1046 (noting that no person has a right "for an award of a monopoly of commercial value") (Leventhal, J. concurring). The Constitution states that Congress shall be vested with the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Article I of the Constitution allows Congress "[t]o make all Laws which shall be

---

[12] On March 23, 2015, Panos filed a Request by the Plaintiff for an Approximation of When a Judgment will be Rendered in the Matter ("Request"). (ECF No. 12.) His Request included additional allegations related to his Complaint. (Request 2–5.) He also attempted to amend his underlying patent application. (Request 6.)

In ruling on a 12(b)(6) motion, the Court cannot consider allegations not raised in the Complaint. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). The Court cannot consider the new facts raised by Panos in his Request in ruling on the Motion to Dismiss. Also, the Court must consider the appeal of Panos's patent application as it was filed with the USPTO. No amendments to that application may be, or will be, permitted in this Court.

11

necessary and proper for carrying into Execution the foregoing Powers." U.S. Const. art. I, § 8, cl. 18.

Pursuant to these powers, Congress enacted a "privilege" to seek a patent upon successful compliance with the laws it has imposed, including fee provisions that fund the patent system. *Figueroa v. United States*, 466 F.3d 1023, 1034 (Fed. Cir. 2006); *see id.* at 1031 ("Fees have been an accepted condition of patentability since the first patent statute was enacted in 1790. Funding the patent system with patent fee revenue is clearly within Congress's authority.") (citation omitted); *Boyden*, 441 F.2d at 1044–45 (dismissing under Rule 12(b)(6) a claim that statutorily imposed filing fees violated equal protection and due process rights of indigent applicant). The Supreme Court of the United States long has recognized Congressional power under Article I to vest decision-making authority in non-Article III[13] tribunals. *See, e.g., Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 583, 593–94 (1985) (citations omitted) (holding that Article III did not prohibit Congress from selecting binding arbitration with only limited judicial review as the mechanism for resolving disputes pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act's ("FIFRA") pesticide registration scheme).

Congress may constitutionally delegate its authority to the USPTO to deny or approve patent applications. *See id.* Nothing Panos alleges countermands these dictates. Thus, Panos's claim that the USPTO has no authority to review and issue findings on patent applications fails to state a plausible claim for relief. The Court dismisses Count I of Panos's Complaint as it pertains to his Improper Delegation claim.

---

[13] Article III courts are established by Article III, Section 1 of the United States Constitution, which states, in pertinent part: "**Section 1.** The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1.

## 2. The USPTO Rules Pass Constitutional Muster

Second, Panos claims that the USPTO uses unconstitutional rules and regulations to encourage the abandonment of patent applications. Panos does not allege that the USPTO applied the rules differently to him. Nothing in this record suggests that the USPTO applied its rules or regulations in an unconstitutional manner generally or as to Panos specifically. Accordingly, the Court finds that Panos again fails to state a plausible claim for relief.

Congress, in the exercise of its plenary power to establish patent law, created an application procedure open to all and "has created no requirements which can be said to be unnecessary." *Boyden*, 441 F.2d at 1043–44; *see* 35 U.S.C. § 2(b)(2)(C).[14] In doing so, Congress conferred on the USPTO the authority "to set reasonable deadlines and requirements for the prosecution of applications."[15] *In re Bogese*, 303 F.3d at 1368; *see* 35 U.S.C. § 2(b)(2)(C); *Tafas v. Dudas*, 511 F. Supp. 2d 652, 663 (E.D. Va. 2007). The USPTO sits as the body "having [the] expertise to settle validity disputes more quickly and cheaply than would litigation." *Maririo v. Dickinson*, 56 F. Supp. 2d 74, 75 (D.D.C. 1999) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1367 (Fed. Cir. 1998)). The USPTO may use the authority conferred by Congress to set reasonable rules and requirements necessary to govern procedure before it. *In re Bogese*, 303 F.3d at 1368.

Any conclusory claim by Panos for a right to a patent without paying fees for completing the examination process imposed by Congress cannot stand. Panos does not plausibly allege that

---

[14] The USPTO "may establish regulations, not inconsistent with law, which . . . shall facilitate and expedite the processing of patent applications." 35 U.S.C. § 2(b)(2)(C).

[15] The Supreme Court has repeatedly "recognized that Congress is not barred from acting pursuant to its powers under Article I to vest decisionmaking authority in tribunals that lack the attributes of Article III courts." *Thomas*, 473 U.S. at 583 (citations omitted).

13

the USPTO's rules violate the Constitution. As such, the Court dismisses Counts I and II of Panos's Complaint as they pertain to his Unconstitutional Rules and Regulations claims.

### 3. An Increase in Application Fees by the USPTO Does Not Violate the Constitution's *Ex Post Facto* Clause

Panos's third constitutional challenge contends that the USPTO applied an *ex post facto* price increase to his application fees in violation of the Constitution. The *Ex Post Facto* Clause prohibits "laws that retroactively 'increase [ ] the penalty by which a *crime* is punishable.'" *United States v. O'Neal*, 180 F.3d 115, 121 (1999) (alteration in original) (emphasis added) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 507 n.3 (1995)). Panos alleges no increase in a criminal penalty. Instead, he challenges the imposition of an additional administrative fee. Nothing in the record suggests that the USPTO assessed any fee change retroactively. The *Ex Post Facto* Clause does not pertain to Panos's claims.

Because Congress may delegate authority to the USPTO to deny or approve patent applications, the USPTO may create rules. Under these rules, the USPTO may increase its application fees without violating the Constitution's *Ex Post Fact* Clause. Panos thus fails to state a plausible constitutional claim as to his application fee violating constitutional principles, including the *Ex Post Facto* clause. The Court dismisses the aspect of Count II invoking the *Ex Post Facto* clause.

### B. Lack of Exhaustion of Administrative Remedies Deprives this Court of Subject Matter Jurisdiction Under Rule 12(b)(1) Over Any Patent-Related Claims Asserted in the Complaint

Having found no merit to Panos's claims about the unconstitutionality of the USPTO procedures, this Court turns to the Director's contention that Panos failed to exhaust his administrative remedies under those rules, thus depriving this Court of jurisdiction. This Court must dismiss any patent-related claims articulated in the Complaint because Panos failed to

exhaust his administrative remedies. The Court lacks subject matter jurisdiction over the claims at bar.

The Administrative Procedure Act ("APA") affords a right of judicial review of agency action. *See* 5 U.S.C. § 702.[16] In the absence of a statute specifying the prerequisites for judicial review, the APA limits judicial review to *final* agency action.[17] *Id.* § 704. Courts generally will not review an agency decision unless the plaintiff has exhausted the available administrative remedies. *McKart v. United States*, 395 U.S. 185, 193–95 (1969). "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

---

[16] The APA states in pertinent part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

[17] The APA addresses the actions reviewable as follows:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

5 U.S.C. § 704.

15

"[E]xhaustion of administrative remedies is a jurisdictional prerequisite to filing a civil lawsuit arising from the denial of a patent."[18] *Fleming v. Coward*, 534 F. App'x 947, 950 (Fed. Cir. 2013) (citing *Leighton v. Coe*, 130 F.2d 841, 842 (D.C. Cir. 1942)) (affirming a dismissal under Rule 12(b)(1) for failure to exhaust administrative remedies); *Maririo*, 56 F. Supp. 2d at 75–76 (same). Exhaustion encompasses filing a petition to revive an abandoned patent application, and "[j]udicial review must await the completion of that administrative process." *Arrow Int'l v. Spire Biomedical, Inc.*, 443 F. Supp. 2d 182, 185 (D. Mass. 2006).

Exhaustion requires either that the Board declare a final decision on an application or that the applicant procure a final agency action.[19] *Fleming*, 534 F. App'x at 950 (citing *Field v. Manbeck*, No. 90-1030, 1990 WL 116818, at *3 (D.D.C. Aug. 2, 1990)). In order to obtain a final Board decision, the applicant must receive two rejections of his or her patent application and appeal the decision of the primary examiner to the Board. 35 U.S.C. § 134(a).[20] The applicant can only perfect such appeal if he or she has first "paid the fee for such appeal." *Id.* A Board decision becomes final when the decision "is rendered by a panel, disposes of all issues with regard to the party seeking judicial review, and does not indicate that further action is required" or when "[t]he decision disposes of all issues or . . . states it is final." 37 C.F.R. § 41.2. Once the applicant has received a final agency decision or final Board decision, he or she has

---

[18] The United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction over this case. *See* 28 U.S.C. § 1295(a)(4)(C); 35 U.S.C. § 145.

[19] A final agency action includes a denial of a petition by the Director of the USPTO. MPEP § 1002.02. However, "[a] dismissal of a petition, a denial of a petition without prejudice, and other interlocutory orders are *not* final agency decisions." *Id.* (emphasis added). Panos does not allege that a final agency action occurred in this case.

[20] The statute provides that "[a]n applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Patent Trial and Appeal Board, having once paid the fee for such appeal." 35 U.S.C. § 134(a).

exhausted the administrative remedies available. *Fleming*, 534 F. App'x at 950. The applicant may then bring a "civil action against the Director in the United States District Court for the Eastern District of Virginia."[21] 35 U.S.C. § 145.

The Court cannot find that Panos exhausted his remedies regarding his patent related claims. After receiving two rejections of his patent application, Panos became entitled to appeal the decision to the Board. 35 U.S.C. § 134(a). Although Panos attempted to appeal his rejections to the Board and filed an appeal brief, he did not pay the appeal forwarding fee required by 37 C.F.R. § 41.20(b)(4). (*See* Admin. R. A337–55.) Panos received notice of the deficiency and notice to pay the fee within the time permitted by 37 C.F.R. § 41.45(a) to avoid dismissal of his appeal. (*Id.* at A355.) Panos again failed to pay the appeal forwarding fee. (*Id.* at A357.) Consequently, the USPTO dismissed the appeal under 37 C.F.R § 41.45(b) and shortly thereafter issued a Notice of Abandonment. (*Id.* at A356–59.)

The Notice of Abandonment contained two options. (*Id.* at A359.) Panos could petition to revive the application under 37 C.F.R. § 1.137 or he could petition the Director under 37 C.F.R. § 1.181 to withdraw the holding of abandonment. (*Id.*) Panos chose neither option. Instead, he initiated suit in this Court without a final agency action or a final decision by the Board.

To enable this Court to assert subject matter jurisdiction over a civil lawsuit arising from the denial of a patent application, a plaintiff must first exhaust all administrative remedies before the USPTO. *Fleming*, 534 F. App'x at 950 (citing *Leighton*, 130 F.2d at 842). Here, neither a final decision by the Board on Panos's application nor a final agency action exists for this Court

---

[21] However, an applicant cannot bring a civil action against the Director in the Eastern District of Virginia if he or she has already taken the appeal to the Federal Circuit. 35 U.S.C. § 145.

17

to review. Therefore, the Court lacks subject matter jurisdiction over any claims resulting from the denial of Panos's patent and must dismiss them.

In sum, Panos's constitutional challenges to the patent process founder. Moreover, he failed to exhaust administrative remedies under the USPTO rules, depriving this Court of jurisdiction. As such, the Court grants the Director's Motion, and dismisses Claims I and II of the Panos's Complaint.

### C. Non-Patent Related Claims Fail to Survive 12(b)(6) Scrutiny Because the Complaint Alleges No Specific Act or Conduct by the Director

Finally, in Count III, Panos asserts miscellaneous allegations regarding a laser beam and sabotage of his YouTube video. This Court must dismiss these non-patent related claims in Count III of the Complaint because Panos alleges no specific act or conduct by the Director regarding these claims. In considering a motion to dismiss under Rule 12(b)(6), a court "tests the sufficiency of a complaint." *Republican Party of N.C.*, 980 F.2d at 952. A claim is insufficient if the court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). If a claim does not allege injury brought about by the defendant, dismissal is proper. *Newkirk*, 2014 WL 4072212, at *2 (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974)).

Although Panos proclaims sabotage of his YouTube video and contends that someone is spying on his home with a laser beam, he does not allege that the Director is responsible. Instead, without plausible facts showing that such information would be held by the USPTO, he asks the Court to direct the USPTO to tell him who is responsible for this conduct. The Court cannot draw the inference that the Director is liable for these non-patent related actions. Therefore, the Court dismisses the miscellaneous allegations in Count III of Panos's Complaint.

## IV. Conclusion

For the foregoing reasons, the Court grants the Director's Motion to Dismiss. (ECF No. 7.) An appropriate Order shall issue.

/s/ <br>
M. Hannah Lauck <br>
United States District Judge

Richmond, Virginia <br>
Date: 9-30-15